## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRIAN McKYE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CR-11-45-R |
| | ) | CIV-17-328-R |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Before the Court is Defendant-Petitioner Brian McKye's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Doc. 1 (Civil) and Doc. 313 (Criminal). For following reasons, his Motion is DENIED.

In February 2011, a federal grand jury sitting in the Western District of Oklahoma returned an indictment charging Brian McKye with eight counts of securities fraud, in violation of 15 U.S.C. § 78j(b), and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). A jury found McKye guilty on all charges save one count of security fraud. The Tenth Circuit reversed Mr. McKye's conviction, however, finding that the Court, rather than instructing the jury that the term "security" includes a "note," should have let the jury decide whether the investment notes Mr. McKye marketed qualified as securities. *United States v. McKye*, 734 F.3d 1104, 1105 (10th Cir. 2013). The Tenth Circuit then remanded the case for a retrial.

Following remand, Mr. McKye's attorney and Mr. McKye both moved to sever their attorney-client relationship. The Court allowed counsel to withdraw, and after an

1

examination on the record, permitted Mr. McKye to proceed to trial pro se but also appointed standby counsel to assist Mr. McKye. At his retrial, the jury found Mr. McKye guilty on all counts except the security-fraud count on which he was previously acquitted. Mr. McKye appealed his conviction, and the Tenth Circuit affirmed. *United States v. McKye*, 638 F.Appx. 680, 681 (10th Cir. 2015), *cert denied*, 136 S.Ct. 2522 (2016).

Mr. McKye now moves to vacate his sentence under 28 U.S.C. § 2255, arguing that he is being held in violation of the Constitution and the laws of the United States. "To obtain collateral relief [Mr. McKye] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). He must allege a violation of federal law constituting a "fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Gordon*, 172 F.3d 753, 755 (10th Cir. 1999). "[T]he petitioner bears the burden of alleging facts which, if proved, would entitle him to relief." *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995).

Mr. McKye advances several bases for relief. Though the Court has liberally construed his pro se arguments pursuant to *Haines v. Kerner*, 404 U.S. 519 (1972), none entitles him to relief. The Court has divided his arguments into seven categories.

Before proceeding, the Court acknowledges that while Mr. McKye devotes nearly his entire brief to describing why legal errors contaminated his trial, he does make a singular reference to his appellate counsel's general failure to raise his brief's arguments on appeal. Counsel did raise one of the following issues (the hearsay issue) on direct appeal, however. As for the arguments not raised on direct appeal, Mr. McKye has not proved that

his counsel was ineffective in failing to raise them. To prevail on a claim for ineffective assistance of appellate counsel, Mr. McKye "must show a reasonable probability that, but for his counsel's unreasonable failure to" raise a particular nonfrivolous issue, "he would have prevailed on his appeal." *Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014). And as the Court explains below, any issues that appellate counsel could have raised would have been meritless and thus would not have entitled Mr. McKye to relief.

**The Admission of Hearsay Testimony from Agent Labarthe**

A central question at Mr. McKye's trial was whether the investment notes that McKye marketed and sold were securities under the federal securities fraud statute. Mr. McKye contends that the Court erred when it admitted testimony from Agent Labarthe, of the Oklahoma Department of Securities, who investigated Mr. McKye's business activities. During cross-examination the Government questioned LaBarthe about the outcome of a state civil action filed against Mr. McKye and his companies as a result of her agency's investigation. (The same investment notes were at issue in both the civil action and Mr. McKye's federal criminal trial.) Agent LaBarthe testified in the criminal trial that the state court previously held that the investment notes were securities.

Mr. McKye argues this was inadmissible hearsay. Mr. McKye, however, already raised this issue on appeal, and the Tenth Circuit summarily rejected it, finding that the introduction of the testimony was harmless. *McKye*, 638 Fed.Appx. at 682. "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v.*

*Prichard*, 875 F.2d 789, 791 (10th Cir. 1989). The Tenth Circuit disposed of this argument, and Mr. McKye cannot now relitigate it via collateral attack.

Before proceeding to Mr. McKye's remaining arguments, the Court acknowledges that, in contrast to this hearsay issue, Mr. McKye failed to raise his remaining arguments on direct appeal. Generally, "Section 2255 is not available to test the legality of matters which should have been raised on appeal." *United States v. Walling*, 982 F.2d 447, 448 (10th Cir. 1992) (alteration omitted). The exception is where a defendant "can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993). There is no exhaustive list of acceptable causes for failing to raise an argument on appeal. But "the existence of a cause of a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to" raise the issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples can include when a factual or legal basis for a claim was not available to counsel or when interference by officials made raising the issue impracticable. *Id*. The miscarriage-of-justice exception, on the other hand, is a "markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (alterations omitted).

So to sum, Mr. McKye failed to raise the following arguments on appeal. But even if he had, the Court would deny relief because has not shown the requisite prejudice and a valid reason for failing to address the arguments on appeal.

**Violations of the Speedy Trial Act**

Mr. McKye argues the Court violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161(c)(2), in two ways.

First, he contends that his retrial commenced too long after the Tenth Circuit reversed his original conviction. He points to § 3161(e), which requires that in the event a defendant is retried after an appeal, "the trial shall commence within seventy days from the date the action occasioning the retrial becomes final . . . ." The problem is that his trial did commence within the provision's 70-day window. "[T]he date the action occasioning the retrial" became final was September 11, 2013, when the Tenth Circuit issued its mandate. *See, e.g., United States v. Scalf*, 760 F.2d 1057, 1059 (10th Cir. 1985) (holding that § 3161(e)'s time period begins running when the Tenth Circuit issues its mandate, not when it reverses a conviction). Mr. McKye's retrial commenced 68 days later, on November 18, 2013.

His second argument involving the Speedy Trial Act relies on the Act's requirement of a 30-day preparation period under § 3161(c)(2). That provision precludes a trial from "commenc[ing] less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." Ostensibly, this provision would not apply to Mr. McKye. He first appeared with counsel at his arraignment on February 2, 2011. His retrial was more than two and a half years later, on November 18, 2013. Mr. McKye seems to argue that because his first appearance after the Tenth Circuit issued its mandate was on October 24, 2013, the Court violated § 3161(c)'s 30-day preparation period when it commenced McKye's new trial on November 18, 2013.

Mr. McKye has not offered and the Court is yet to find any authority holding that he was entitled to a new 30-day preparation period starting upon his first appearance following the Tenth Circuit's remand. He cites the Ninth Circuit's observation that "[w]hen an indictment is dismissed on motion of the defendant, and the defendant is thereafter reindicted, both the 30–day trial preparation period and the 70–day speedy trial time period start over." *United States v. Karsseboom*, 881 F.2d 604, 606 (9th Cir. 1989). Those are not the facts here. The Government retried Mr. McKye following reversal. It did not reindict him following dismissal.

Mr. McKye's claim is meritless because the Act's 30-day preparation period is typically satisfied when a defendant's counsel has 30 days to prepare for the original trial. For instance, so long as a defendant's original counsel has 30 days to prepare for trial, commencing the trial less than 30 days after defendant changes counsel does not violate the Speedy Trial Act. *See, e.g., U.S. v. Jackson*, 50 F.3d 1335, 1339 (5th Cir. 1995). The same rationale applies for superseding indictments. A defendant is not entitled to a new 30-day window merely because the grand jury returns a superseding incitement. *See United States v. Richardson*, 537 F.3d 951, 958–59 (8th Cir. 2008); *also see United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985) (holding 30-day preparation period was satisfied where a superseding indictment had been filed one day before trial since defendant's trial was not commenced until more than two months after his first appearance through counsel). And even when an indictment is dismissed and reinstated following an appeal, the Speedy Trial Act does not automatically confer a new 30-day preparation period on a defendant. *See, e.g., United States v. Maybusher*, 735 F.2d 366, 369 (9th Cir. 1984).

6

Nothing persuades the Court that the Speedy Trial Act should have afforded Mr. McKye a new 30-day preparation period following the Tenth Circuit's remand. The "sole purpose" of the Act's 30-day preparation period is "to ensure that the ends of justice are protected by providing defendants adequate trial preparation time." *United States v. Watkins*, 811 F.2d 1408, 1411 (11th Cir. 1987). Finding that the Government retried Mr. McKye too soon hardly seems to accord with the ends of justice: it was Mr. McKye—not the Government—that insisted on quickly commencing a new trial. *See* Doc. 144 ("Defendant herby humbly asks this Court to expedite further remanded proceedings with all possible haste according to the statutory parameters of the Speedy Trial Act."). In short, there was no violation of the Speedy Trial Act, and habeas relief on that ground is therefore inappropriate.

**Errors Related to the Indictment**

Mr. McKye also raises several claims relating to his indictment. He first complains that he failed to timely receive a copy of the indictment before his retrial. Again, it is unclear how he suffered prejudice. The Government retried him on the same counts alleged in the initial indictment, save for the one count on which he was acquitted. After Mr. McKye informed the Court that he did not have a copy of this "new" indictment at a hearing on October 24, 2013, he received a copy of it on October 30, 2013. And as the Court noted at this October 30 hearing, Mr. McKye already possessed the original indictment.

His next complaint relating to the indictment is that the Government failed to identify key elements of his charged offenses. This, though, does not give rise to relief. "[T]he sufficiency of [an] indictment or information is not subject to collateral attack by

7

habeas corpus or motion under 2255." *Payton v. United States*, 436 F.2d 575, 577 (10th Cir. 1970). Yet even if it were, Mr. McKye could not show prejudice. His theory is that he was unaware the Government would attempt to prove that the notes he marketed qualified as an investment contract, and therefore a security. But as the Tenth Circuit recognized when it affirmed his conviction, in order to prove his fraud involved securities, the Government put on "strong evidence that the investment notes were securities under both the investment contract theory and the note theory." *McKye*, 638 F.App'x at 684 (10th Cir. 2015). Put differently, even if the Government had not proved that the investment notes qualified as an "investment contract" under the federal law defining "security," 15 U.S.C. § 77b(a)(1), it still would have prevailed by proving that the investment notes were securities under the statute. Any failure of the indictment to apprise Mr. McKye that the Government would proceed under an investment-contract theory was thus harmless.

**Denial of the Right to Counsel**

Mr. McKye has essentially three complaints about his trial counsel, or lack thereof. His first is that the Court improperly denied his request to appoint someone other than his two previous court-appointed attorneys that he had fired. In a lengthy exchange at the October 30, 2013 hearing, the Court explained that Mr. McKye had a choice: proceed pro se or accept the reappointment of one of the attorneys whom he had previously fired. Mr. McKye opted to proceed pro se. As he informed the Court, he would rather quickly go to trial than have counsel who would request additional time to prepare. He made this decision in spite of the Court's warnings about proceeding pro se in a complex case steeped in securities law. *See* Doc. 300.

In other words, Mr. McKye had numerous opportunities to obtain counsel but chose not to. "An indigent defendant must be provided with appointed counsel at state expense. But an indigent defendant does not have a right to choose appointed counsel." *United States v. Nichols*, 841 F.2d 1485, 1504–1505 (10th Cir. 1988). That Mr. McKye did not prefer either of his Court-appointed attorneys does not mean he was deprived of representation.

Mr. McKye's repeated refusals to accept counsel is also why the Court cannot accept his second argument that his waiver of counsel and decision to proceed pro se was involuntary because he did not understand he would have to defend against the Government's theory that his investment notes qualified as an "investment contract" under the federal securities statute. Again, the Court emphasized the numerous benefits to accepting counsel and the dangers of proceeding pro se. He cannot now argue that he was unaware he would have to defend himself on charges, especially when those charges were the identical ones he faced in his first trial.

Mr. McKye's third argument relating to his representation is that the Court impermissibly hampered his defense by denying him personal access to a law library. But Mr. McKye can hardly claim he was prejudiced by lack of access to a law library. The Court provided him with standby counsel, a proper substitute for library access. *See, e.g., United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999) ("It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library."). Habeas relief on this ground is consequently inappropriate.

Finally, Mr. McKye insists his appellate counsel poorly framed his hearsay argument in his brief and failed to argue that Mr. McKye's carrying $2 million in insurance

9

coverage demonstrated he meant to protect his investors. To prove ineffective appellate counsel, "defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that the deficient performance resulted in prejudice." *United States v. Brinson*, 652 F.Appx. 705, 707–708 (10th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Mr. McKye's appellate counsel, though, was not required to raise every possible issue on appeal. Rather, "[t]he weeding out of weak claims to be raised on appeal is the hallmark of effective advocacy, because every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court." *Scott v. Mullin*, 303 F.3d 1222, 1230 n.4 (10th Cir. 2004). Mr. McKye has failed to show how his appellate counsel's representation was in any way objectively unreasonable.

**Prejudicial Remarks and Evidence by the Government**

Mr. McKye's fifth ground for habeas relief concerns the Government's reference to his "Ponzi Scheme" and him as a "pay day lender." He also objects to the Government's references to his "real estate" sales and rentals, its alleged use of "investment note" and "investment contract" interchangeably, and the introduction of expert testimony, which he says the Government inappropriately characterized as lay testimony. All of this, he insists, unfairly prejudiced the trial.

His arguments are best construed as Due Process challenges, which means that to prevail he must show that the remarks were "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Holland v. Allbaugh*, 824 F.3d 1222, 1228 (10th Cir. 2016). That said, relief is not appropriate "where substantial evidence supported the jury's

verdict." *Id*. Again, the Tenth Circuit found strong evidence supporting his conviction. *See McKye*, 638 Fed.Appx. at 684 (concluding there was "strong evidence that the investment notes were securities under both the investment contract theory and the note theory"). Relief on this ground is thus inappropriate. His arguments also seem to suggest that this evidence was so prejudicial that the jury erred in finding that the evidence actually supported a conviction. That argument, however, is not available under § 2255. A prisoner may not use § 2255 as a vehicle to challenge the sufficiency of the evidence used to convict him. *Payton v. United States*, 436 F.2d 575, 577 (10th Cir. 1970); *United States v. Aragon-Pando*, 986 F.2d 1430, 1993 WL 18530, *1 (10th Cir. 1993).

**Erroneous Jury Instruction**

Mr. McKye also objects to the Court's jury instruction describing what constitutes a "security." The Court instructed the jury that in deciding whether a note bears a family resemblance to notes that are not considered securities under federal law, jurors should consider, among other things, the existence of risk-reducing factors:

> If no factor exists that reduces the risk of the note, such as the existence of another regulatory scheme outside of the securities laws, collateral, or insurance, then the note tends to be a security. However, if such a risk-reducing factor does exist, then the note is less sensibly viewed as a security.
>
> Doc. 188, at 37.

Mr. McKye's theory on how this instruction confused the jury is not entirely clear, but he appears to be arguing that the instruction did not clearly explain the effect of carrying insurance on whether a note qualifies as a security. He seems to contend that the instruction caused jurors to believe that "collateral, or insurance" "tends to be a security"—thereby

11

convincing jurors that because he carried an insurance policy on the investment note or notes, they were securities as a matter of law. Even if this were a sensible reading of the jury instruction, which the Court does not believe it is, Mr. McKye still cannot clear the high burden required to obtain habeas relief. "Unless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." *Young v. Attorney Gen. for New Mexico*, 534 F. App'x 707, 710–11 (10th Cir. 2013). Again, Mr. McKye has not and cannot make this showing. "[A] misstatement of an element in jury instructions is subject to harmless error analysis on habeas review." *Scoggin v. Kaiser*, 186 F.3d 1203, 1207 (10th Cir. 1999). This instruction, even if it was error, was necessarily harmless; the Tenth Circuit found there was sufficient evidence to support his conviction under either the investment-contract theory or a note theory. *McKye*, 638 Fed.Appx. at 684.

**Cumulative Error**

Mr. McKye's last argument is that cumulative error justifies relief. But the Court cannot find cumulative error where there is no error to begin with. *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990).

**Conclusion**

The Court denies Petitioner a Certificate of Appealability (COA) under Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts. When a court denies a habeas petition on the merits, a petitioner is entitled to a COA only if he demonstrates "that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029 (2003). In contrast, where a habeas petition is denied on procedural grounds, a petitioner is entitled to a COA only if he demonstrates that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Stack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Mr. McKye has made neither showing and is thus not entitled to a COA. He may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22 if he wishes to appeal the Court's ruling on his motion.

In conclusion, Petitioner's motion under 28 U.S.C. § 2255 is DENIED and DISMISSED WITH PREJUDICE because it lacks merit.

IT IS SO ORDERED this 31st day of July 2017.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE